**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------x
                              :
RONALD B.                     :    Civ. No. 3:21CV000381(SALM)
                              :
v.                            :
                              :
COMMISSIONER OF THE SOCIAL    :
SECURITY ADMINISTRATION[1]    :    April 25, 2022
                              :
------------------------------x
```

**RULING ON CROSS MOTIONS**

    Plaintiff Ronald B. ("plaintiff") brings this appeal under

§205(g) of the Social Security Act (the "Act"), as amended, 42

U.S.C. §405(g), seeking review of a final decision by the

Commissioner of the Social Security Administration (the

"Commissioner" or "defendant") denying his application for

Disability Insurance Benefits ("DIB"). Plaintiff has moved to

reverse the Commissioner's decision or, in the alternative, to

---

[1] Plaintiff has named Andrew Saul, a former Commissioner of the
Social Security Administration, as defendant. Claims seeking
judicial review of a final agency decision are filed against the
Commissioner in his or her official capacity; as a result, the
particular individual currently serving as Commissioner is of no
import. See Fed. R. Civ. P. 17(d) ("A public officer who ... is
sued in an official capacity may be designated by official title
rather than by name[.]"); 42 U.S.C. §405(g) ("Any action
instituted in accordance with this subsection shall survive
notwithstanding any change in the person occupying the office of
Commissioner of Social Security or any vacancy in such
office."). Accordingly, the Clerk of the Court is directed to
update the docket to name the Commissioner of the Social
Security Administration as the defendant. See Fed. R. Civ. P.
25(d); 42 U.S.C. §405(g).

remand for further administrative proceedings. [Doc. #15].
Defendant has moved for an order affirming the decision of the
Commissioner. [Doc. #19].

For the reasons set forth below, plaintiff's Motion for
Order Reversing the Decision of the Commissioner or in the
alternative Motion for Remand for a Hearing **[Doc. #15]** is
**GRANTED**, to the extent he seeks a remand for further
administrative proceedings, and defendant's Motion for Order
Affirming the Decision of the Commissioner **[Doc. #19]** is **DENIED**.

I.    **PROCEDURAL HISTORY**[2]

Plaintiff filed an application for DIB on October 26, 2018.
See Certified Transcript of the Administrative Record, Doc. #12,
compiled on June 9, 2021, (hereinafter "Tr.") at 215-16.
Plaintiff alleged disability beginning April 10, 2013. See id.[3]
Plaintiff's application was denied initially on March 25, 2019,
see Tr. 108-10, and upon reconsideration on January 14, 2020.
See Tr. 117-24.

On June 11, 2020, Administrative Law Judge ("ALJ")
Alexander Borré held a hearing, at which plaintiff appeared by

---

[2] In compliance with the Standing Scheduling Order, plaintiff
filed a Statement of Material Facts entitled "Medical
Chronology," Doc. #15-2, to which defendant filed a "Responsive
Statement of Facts Pursuant to the Standing Order[.]" Doc. #19-
2.

[3] On June 3, 2020, plaintiff amended his alleged onset date to
August 18, 2016. See Tr. 206.

telephone with his former counsel, Attorney Mark Wawer. See
generally Tr. 31-64. Vocational Expert Margaret Heck appeared
and testified by telephone. See Tr. 64-77. On July 15, 2020, the
ALJ issued an unfavorable decision. See Tr. 12-29. On January
19, 2021, the Appeals Council denied plaintiff's request for
review of the ALJ's decision, thereby making the ALJ's July 15,
2020, decision the final decision of the Commissioner. See Tr.
1-6. This case is now ripe for review under 42 U.S.C. §405(g).

## II.   STANDARD OF REVIEW

The review of a Social Security disability determination
involves two levels of inquiry. "First, the Court reviews the
Commissioner's decision to determine whether the Commissioner
applied the correct legal standard. Next, the Court examines the
record to determine if the Commissioner's conclusions are
supported by substantial evidence." Tejada v. Apfel, 167 F.3d
770, 773 (2d Cir. 1999) (citations omitted). Substantial
evidence is evidence that "'a reasonable mind might accept as
adequate to support a conclusion[;]'" it is "'more than a mere
scintilla.'" Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S.
197, 229 (1938)). The reviewing court's "responsibility is
always to ensure that a claim has been fairly evaluated[.]" Grey
v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

"The Court does not reach the second stage of review --

evaluating whether substantial evidence supports the ALJ's

conclusion -- if the Court determines that the ALJ failed to

apply the law correctly." Poole v. Saul, 462 F. Supp. 3d 137,

146 (D. Conn. 2020).

> Where there is a reasonable basis for doubt whether the
> ALJ applied correct legal principles, application of the
> substantial evidence standard to uphold a finding of no
> disability creates an unacceptable risk that a claimant
> will be deprived of the right to have her disability
> determination made according to the correct legal
> principles.

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set

forth with sufficient specificity" by the ALJ to enable a

reviewing court "to decide whether the determination is

supported by substantial evidence." Ferraris v. Heckler, 728

F.2d 582, 587 (2d Cir. 1984). The "ALJ is free to accept or

reject" the testimony of any witness, but "[a] finding that the

witness is not credible must nevertheless be set forth with

sufficient specificity to permit intelligible plenary review of

the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255,

260-61 (2d Cir. 1988). "Moreover, when a finding is potentially

dispositive on the issue of disability, there must be enough

discussion to enable a reviewing court to determine whether

substantial evidence exists to support that finding." Leslie H.

L. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00150(SALM), 2021 WL

5937649, at *2 (D. Conn. Dec. 16, 2021) (citation and quotation

marks omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)).

## III.  SSA LEGAL STANDARD

Under the Social Security Act, every individual meeting certain requirements who is under a disability is entitled to disability insurance benefits. See 42 U.S.C. §423(a)(1).

For the Social Security Administration ("SSA") to consider a claimant disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" 42 U.S.C. §423(d)(2)(A); <u>see</u>

<u>also</u> 20 C.F.R. §404.1520(c) (requiring that an "impairment or

combination of impairments ... significantly limit[] ...

physical or mental ability to do basic work activities[]" to be

considered "severe").

There is a familiar five-step analysis used to determine

whether a person is disabled. <u>See</u> 20 C.F.R. §404.1520(a)(4). In

the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per</u>

<u>curiam</u>). If and only if the claimant does <u>not</u> have a listed

impairment, the Commissioner engages in the fourth and fifth

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases

previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

> Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity.

Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Hum. Servs., 360 F. App'x 240, 243 (2d Cir. 2010); see also Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). The residual functional capacity ("RFC") is "the most" a person is still capable of doing despite limitations resulting from her or his physical and mental impairments. 20 C.F.R. §404.1545(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and quotation marks omitted).

## IV.   **THE ALJ'S DECISION**

Following the above-described evaluation process, the ALJ concluded that plaintiff "was not under a disability within the meaning of the Social Security Act from August 18, 2016, through the date last insured[,]" June 30, 2018. Tr. 16.

At step one, the ALJ found: "The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 18, 2016, through his date last insured of June 30, 2018[.]" Tr. 18.[4]

At step two, the ALJ found: "Through the date last insured, [plaintiff] had the following severe impairment: depressive disorder[.]" Id. The ALJ found plaintiff's "prostate cancer, irritable bowel syndrome, lumbar spine degenerative disc disease and a cyst in the left hand, when considered both singly and in combination" to be "nonsevere impairments during the period at issue." Id.

At step three, the ALJ determined that, through the date last insured, plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Tr. 19. The ALJ specifically

---

[4] Before the step one determination, the ALJ concluded that plaintiff had "last met the insured status requirements of the Social Security Act on June 30, 2018." Tr. 17.

considered listing 12.04 (Depressive, bipolar and related

disorders). See id.

Before moving to step four, the ALJ found "that, through

the date last insured," plaintiff had the RFC

> to perform a full range of work at all exertional levels
> but with the following nonexertional limitations: simple
> and repetitive tasks (defined as reasoning level 2 as
> defined in the (Dictionary of Occupational Titles
> ("DOT"); could interact occasionally with the public,
> coworkers and supervisors.

Tr. 20 (sic). At step four, the ALJ found that "[t]hrough the

date last insured," plaintiff "was capable of performing past

relevant work as an eyelet machine operator." Tr. 22. The ALJ

also made alternative step five findings, concluding that "there

were other jobs that existed in significant numbers in the

national economy that the [plaintiff] also could have performed

considering the [plaintiff's] age, education, work experience,

and" RFC. Tr. 22-23.

## V.   DISCUSSION

At the outset, the Court notes the relevant time period

under review. A claimant, such as the plaintiff here, seeking

DIB for a period of disability must both present evidence of his

disability and satisfy the "insured status" requirements of the

Act. 42 U.S.C. §423(c). To be entitled to benefits, plaintiff

must demonstrate that he was disabled prior to the expiration of

his insured status, i.e., as of his date last insured ("DLI").

See Pratts v. Chater, 94 F.3d 34, 35-36 (2d Cir. 1996); Shaw v.

Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 20 C.F.R.

§§404.130, 404.131, 404.315(a), 404.320(b). Plaintiff's DLI is

June 30, 2018. See Tr. 17. Accordingly, the relevant time period

under consideration is the amended alleged onset date of August

18, 2016, through June 30, 2018, plaintiff's DLI. See Tr. 17-18.[5]

Plaintiff asserts that the ALJ committed error by

formulating the RFC "without the benefit of any opinion

evidence[,]" Doc. #15-1 at 7, and that his "failure to make any

effort to obtain such records is ... error." Id. at 8. The Court

construes this as two separate but related arguments, first,

that the RFC is not supported by substantial evidence because it

is not based on any medical opinion evidence, and second, that

the ALJ failed to develop the record by not obtaining such

evidence. See id. at 6-11. Defendant contends, in pertinent

part, that the ALJ properly developed the record, and "the lack

of a medical source statement does not render a record

incomplete." Doc. #19-1 at 6.

---

[5] "[E]vidence bearing upon an applicant's condition subsequent to
the date upon which the earning requirement i.e., insured
status was last met is pertinent evidence in that it may
disclose the severity and continuity of impairments existing
before the" DLI. Pollard v. Halter, 377 F.3d 183, 193-94 (2d
Cir. 2004) (citation and quotation marks omitted). However,
"[m]edical evidence that predates the alleged disability onset
date is ordinarily not relevant to evaluating a claimant's
disability." Masoud v. Saul, 448 F. Supp. 3d 147, 156 n.7 (D.
Conn. 2020).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996); see also Swiantek v. Comm'r of Soc. Sec., 588 F. App'x 82, 84 (2d Cir. 2015). An ALJ's obligation "to develop the record is enhanced when the disability in question is a psychiatric impairment." Lacava v. Astrue, No. 11CV07727(WHP)(SN), 2012 WL 6621731, at *11 (S.D.N.Y. Nov. 27, 2012). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation and quotation marks omitted). Accordingly, the duty to develop the administrative record is triggered "only if the evidence before [the ALJ] is inadequate to determine whether the plaintiff is disabled." Walsh v. Colvin, No. 3:13CV00687(JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) (citation and quotation marks omitted).

The ALJ had no opinion evidence he found even partially persuasive, and no assessments of plaintiff's functional capacity, upon which to rely in formulating the RFC. Remarkably, there were no opinions by agency consultant physicians available to the ALJ, because the agency consultants "found there was

11

insufficient evidence to make a determination about [plaintiff's RFC] during the period at issue[.]" Tr. 22. There were "letters" from a social worker who treated the plaintiff offering opinions regarding his condition, and a "note" from a doctor opining regarding plaintiff's lifting restrictions. Id. All of these opinions were dated in 2020, well after the relevant disability period, and the ALJ found all of the opinions to be "not persuasive[.]" Id.

In sum, there were no functional assessments from state agency consultants, and "the ALJ concluded that none of the medical opinion evidence [from plaintiff's providers] provided a functional assessment based on objective medical evidence." Kurlan v. Berryhill, No. 3:18CV00062(MPS), 2019 WL 978817, at *3 (D. Conn. Feb. 28, 2019). The ALJ was thus left with no medical opinion of plaintiff's functional abilities on which he could reasonably base an RFC.

"[T]he absence of any ... medical opinion assessing [plaintiff's] mental functional limitations remains an obvious gap." Hooper v. Colvin, 199 F. Supp. 3d 796, 816 (S.D.N.Y. 2016) (citation and quotation marks omitted). This is particularly true where, as here, the ALJ did not have an "opinion from even one consultative examiner, let alone from a treating physician[]" for the relevant time period. Id. at 815. The evidence before the ALJ was inadequate to determine whether

12

plaintiff is disabled because there was no opinion or assessment

of plaintiff's functional capabilities for the relevant time

period. Indeed, if there was insufficient information for the

agency consultants to make a determination regarding plaintiff's

RFC, it is plain that without persuasive opinions from treating

providers, there was no possible way for the ALJ to determine

the RFC.

The Second Circuit cases on which defendant relies in

support of her position to the contrary are readily

distinguishable. First, relying on Stone v. Commissioner, 767 F.

App'x 207 (2d Cir. 2019), defendant asserts: "When confronted

with a similar scenario, the Second Circuit has concluded that

the ALJ was not required to take further action." Doc. #19-1 at

5. In Stone, the plaintiff argued "that the ALJ failed to

adequately develop his medical record because she did not

solicit a retrospective opinion from his current treating

physician[] ... regarding the onset date of Stone's disability."

Stone, 767 F. App'x at 208. The Second Circuit rejected this

argument because, inter alia, the plaintiff had failed to argue

that his treating physician, "who did not begin treating Stone

until [after the alleged onset date], possesses the diagnostic

tools necessary to undertake a retrospective assessment of the

onset date of Stone's disorder." Id. The scenario presented in

Stone is not similar to the circumstances in this case. First,

it is unclear what other opinion evidence was before the ALJ in

Stone. That alone makes it difficult to conclude that the two

cases are similar, because in this case, there was no assessment

of plaintiff's functional capacity for the relevant time period.

Second, plaintiff here does not contend that opinion evidence is

necessary for determination of the onset date, but rather to

provide some functional assessment of plaintiff's functional

capabilities, which is otherwise completely absent from the

record for the relevant time period.

Next, relying on Tankisi v. Comm'r of Soc. Sec., 521 F.

App'x 29 (2d Cir. 2013), defendant asserts that plaintiff "is

incorrect[]" "that the RFC finding cannot be supported in the

absence of medical opinions[.]" Doc. #19-1 at 6. Defendant

further contends that under Tankisi, "where the record contains

sufficient evidence from which an ALJ can assess the"

plaintiff's RFC, remand is not required. Id. (citation and

quotation marks omitted). "This case appears similar to Tankisi

on the surface; after all, there are nearly 1,000 pages of

medical evidence, which can clearly be considered 'quite

extensive' on a superficial level. But the real import lies

in what those 1,000 pages say, not the mere fact the records

exist." Holt v. Colvin, No. 3:16CV01971(VLB), 2018 WL 1293095,

at *7 (D. Conn. Mar. 13, 2018). The record here is

distinguishable from the record in Tankisi. Unlike Tankisi and

14

its progeny, the record in this case does not include <u>any</u>

assessment of plaintiff's limitations or functional capacity

from <u>any</u> physician, treating or otherwise, for the disability

period. <u>See</u> <u>Tankisi</u>, 521 F. App'x at 34 ("The medical record in

this case is quite extensive. Indeed, although it does not

contain formal opinions on Tankisi's RFC from her treating

physicians, it does include an assessment of Tankisi's

limitations from a treating physician, Dr. Gerwig."). Nor is the

Court able to glean from the treatment notes of record the views

of <u>any</u> physicians regarding plaintiff's RFC. <u>See</u> <u>Holt</u>, 2018 WL

1293095, at *7.

Finally, relying on <u>Banyai v. Berryhill</u>, 767 F. App'x 176

(2d Cir. 2019), defendant asserts that "although the ALJ

acknowledged that he was considering the use of a medical expert

... (Tr. 82), he was under no obligation to utilize one

because[] ... the record was sufficient" to assess plaintiff's

RFC. Doc. #19-1 at 6. Again, the circumstances of <u>Banyai</u> are not

similar to those presented in this case. First, the analysis in

<u>Banyai</u> related to the determination of an onset date and not the

plaintiff's functional capacity. <u>See</u> <u>Banyai</u>, 767 F. App'x at

178-79. Second, there is no indication from the Second Circuit's

decision that there was a <u>complete</u> absence of opinion evidence

or functional assessments in the record. By contrast, here,

there is not a single assessment of plaintiff's functional

capacity for the relevant time period.[6]

In the absence of <u>any</u> opinion or assessment of plaintiff's

functional capabilities during the relevant period, the record

was not sufficient for the ALJ to reach a conclusion. "[A]n ALJ

is not a medical professional, and is not qualified to assess a

claimant's RFC on the basis of bare medical findings." <u>Benman v.</u>

<u>Comm'r of Soc. Sec.</u>, 350 F. Supp. 3d 252, 257 (W.D.N.Y. 2018)

(citation and quotation marks omitted). Accordingly, the ALJ's

failure to obtain any opinion concerning, or any assessment of,

plaintiff's functional capabilities during the relevant time

period was error, where, as here, the records on which the ALJ

relied did not "shed any light on [plaintiff's] residual

functional capacity." <u>Guillen v. Berryhill</u>, 697 F. App'x 107,

108 (2d Cir. 2017). "Because an RFC determination is a medical

determination, an ALJ who makes an RFC determination in the

absence of supporting expert medical opinion has improperly

substituted his own opinion for that of a physician, and has

committed legal error." <u>Hilsdorf v. Comm'r of Soc. Sec.</u>, 724 F.

Supp. 2d 330, 347 (E.D.N.Y. 2010); <u>see also</u> <u>Holt</u>, 2018 WL

1293095, at *7.

---

[6] The ALJ appeared to acknowledge the record's deficiency at the
administrative hearing when he stated that he was "weighing
getting a Medical Expert to look at all the records[.]" Tr. 82.

16

"Because he gave little to no weight to all of the medical opinions ... the ALJ had a duty to develop the record and obtain relevant medical opinions before making the RFC assessment." Kurlan, 2019 WL 978817, at *3. The record was incomplete, and insufficient, and the decision based thereon was not supported by substantial evidence. See Pratts, 94 F.3d at 38. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this Ruling.

In light of this finding, the Court need not reach the merits of plaintiff's remaining arguments. On remand the Commissioner will address the other claims of error not discussed herein. The Court offers no opinion on whether the ALJ should or will find plaintiff disabled on remand. Rather, the Court finds remand is appropriate for the reasons discussed herein.

## VI.   CONCLUSION

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the alternative Motion for Remand for a Hearing **[Doc. #15]** is **GRANTED,** to the extent he seeks a remand for further administrative proceedings, and defendant's Motion for Order Affirming the Decision of the Commissioner **[Doc. #19]** is **DENIED.**

It is so ordered this 25th day of April, 2022, at New Haven, Connecticut.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE